## In re Dollar Title and Trust Company.   No. 1

*H. F. Stambaugh,* for exceptant; *Thomas H. Armstrong,* for respondent.

McLAUGHRY, P. J., March 31, 1932.—Symons-Flaherty & Co. filed objections to the first partial account of William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, in possession of the Dollar Title and Trust Company, of Sharon, Pa. The first objection is as follows:

"Symons-Flaherty & Co. excepts to the failure of the accountant to allow and pay its claim in the sum of $2164.25."

It was stated by counsel for the claimant at the time of the argument that this objection has been withdrawn.

The second objection is as follows:

"Symons-Flaherty & Co. excepts to the failure of the accountant to allow and pay its claim in the sum of $11,000, with interest, and less a credit of $1755 and less any sums awarded to claimant on claim in the first exception."

Exceptions filed allege that, on or about August 10, 1927, Louis Symons, acting for H. Windt & Co., employed the Dollar Title and Trust Company to examine and make report upon the validity of title to twenty-five second mortgages on property in Ohio, and on or about August 19, 1927, the Dollar Title and Trust Company reported that the title to said mortgages and the premises covered by them was good, marketable and free from encumbrances, and said Dollar Title and Trust Company issued to the said Louis Symons, acting for H. Windt & Co., a certificate stating that the mortgages and notes accompanying the same had been assigned to the said Louis Symons and delivered to R. E. Matthews as agent for said Louis Symons.

It is also alleged that the officials of the Dollar Title and Trust Company represented to Louis Symons that payments under said mortgages were being made regularly, that payments under the first mortgages owned by the Metropolitan Life Insurance Company on the same premises were being made regularly, and that no defaults had occurred in payments thereunder.

The exceptions allege that on these representations Louis Symons, acting as agent for H. Windt & Co., purchased the said twenty-five mortgages and paid for them the sum of $11,000; that payments on the first mortgages had not been made regularly; that the mortgages and notes accompanying the same had not been properly assigned to Louis Symons, but that eleven of said mortgages were not accompanied by notes, and the notes accompanying eight of the remaining mortgages had not been assigned or endorsed.

The claimants allege that by reason of the fact that no notes accompanied some of the mortgages, or the notes were not properly assigned, and the first mortgages on the same premises held by the Metropolitan Life Insurance Company were in default, and the obligors under the second mortgages were

not able to pay and did not pay the same, the mortgages and notes accompanying the same, for which the claimant paid the sum of $11,000, are now in default and claimant is, therefore, entitled to the said sum of $11,000, plus interest which would have been received on said mortgages, and less a credit of $1755.54 which claimant has collected on the same, and less any sums awarded to claimant on claim and trust agreement.

It is alleged that, on or about February 24, 1931, the corporate title of H. Windt & Co. was changed to Symons-Flaherty & Co., the objectors to the first partial account of William D. Gordon, Secretary of Banking.

A hearing was held and testimony taken for the purpose of substantiating the facts in the exceptions filed. We have examined the testimony carefully and the briefs filed in this matter, and it has been with some difficulty that we have been able to ascertain upon what ground the claimant bases its right to recover from the receiver, the secretary of banking, now in possession of the Dollar Title and Trust Company.

From the facts found in the testimony, it seems that the Greater Sharon Realty Company, doing business in the City of Sharon, owned certain mortgages, and some of these mortgages were assigned to the Dollar Title and Trust Company as collateral security for money loaned by the trust company. A number of mortgages, including the mortgages held by the trust company as collateral security, were sold by the Greater Sharon Realty Company to H. Windt & Co. (now Symons-Flaherty & Co.), the consideration for the sale of the mortgages being paid by H. Windt & Co. (now Symons-Flaherty & Co.) to the Greater Sharon Realty Company. The release of the mortgages put up as collateral security was obtained by the Greater Sharon Realty Company making payment of its loan to the Dollar Title and Trust Company. At the request of the Greater Sharon Realty Company, the Dollar Title and Trust Company assigned the mortgages held as collateral security direct to H. Windt & Co., the consideration, however, being paid by the said H. Windt & Co. to the Greater Sharon Realty Company, the realty company having given credit to H. Windt & Co. in consideration of the mortgages sold.

As we understand it, the only connection which the Dollar Title and Trust Company had with the transaction is that some time prior to the sale of the mortgages the Dollar Title and Trust Company had loaned the Greater Sharon Realty Company a sum of money and had received as collateral security for said loan some of the mortgages, which were later sold by the realty company to H. Windt & Co. It is clear from the evidence presented that the checks in payment for the mortgages were payable to the Greater Sharon Realty Company.

In the brief filed by counsel for the claimant, it is argued that the Dollar Title and Trust Company is liable for misrepresentation in the certificate of title furnished by it, and also for the statement of its officers that none of the first mortgages were in default. A certificate was presented in evidence and marked exceptant's Exhibit No. 1. We are unable to find that there are any misrepresentations in this paper. Besides the list of mortgages, we find the following on the certificate:

"I hereby certify that the foregoing mortgages and notes accompanying the same have this day been assigned to Louis Symons and delivered to me as his agent."

This is merely a statement that the mortgages were assigned.

Louis Symons testified that Mr. Matthews and Mr. Flowers told him the payments on the first mortgages were being kept up. They both denied that they had made any misrepresentations to Mr. Symons, Mr. Flowers testifying

that he advised Mr. Symons that if he should purchase the mortgages he should look into them. In respondent's Exhibit "C," Mr. Symons not only acknowledged that he knew the first mortgages were in default but guaranteed the trust company that he would take care of the arrearages. We think this letter, together with the other testimony presented, would overcome the testimony as to the misrepresentations. We think it unnecessary to further discuss the evidence produced at the hearing.

We have examined the testimony carefully and are unable to find that the claimant has presented any evidence that would justify the secretary of banking, the receiver of the Dollar Title and Trust Company, in making payment of this claim. It has not been shown that the Dollar Title and Trust Company was guaranteeing these mortgages and notes, and the trust company was not under any obligation in respect to them other than to account for the moneys which it collected after they were turned over to the bank by the claimant for collection.

The testimony as to notes alleged to be missing is very meager, and this is overcome by the written receipt offered in evidence that all of the notes and mortgages were received, and there is no evidence produced as to which notes are missing or the amounts of the same upon which the court could base any claim. Finding no merit to the claimant's objections, it is our duty to dismiss the same.

### Order

And now, March 31, 1932, this matter came on to be heard and testimony was taken and argued by counsel; whereupon, after due consideration, the objections made by Symons-Flaherty & Co. to the first partial account of William D. Gordon, Secretary of Banking of the Commonwealth of Pennsylvania, are overruled.  From W. G. Barker, Mercer, Pa.